UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOHNNY R. TINDELL,                       )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )   No.:   3:06-CV-160
                                         )          (VARLAN/GUYTON)
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
        Defendant.                       )

# MEMORANDUM OPINION

This matter is before the District Court on plaintiff's Motion for Summary Judgment [Doc. 12] and defendant's Motion for Summary Judgment. [Doc. 16]. Having exhausted his administrative remedies, plaintiff Johnny R. Tindell seeks judicial review of the decision of the Administrative Law Judge that plaintiff was not disabled, and therefore not eligible for benefits under the Social Security Act.

In his findings the Administrative Law Judge ("ALJ") stated that the claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through June 31, 2004; that the claimant has not engaged in substantial gainful activity since the alleged onset of disability; that the claimant's depression, nervousness, tinnitus, arthritic knees, bilateral plantar fascitis, and history of alcohol abuse, are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b); that these medically determinable impairments do not meet or medically equal one of the listed impairments in

Appendix 1, Subpart P, Regulation No. 4; that the ALJ found the claimant's allegations regarding his limitations are not credible for reasons set forth in the ALJ's opinion; that the claimant has a residual functional capacity to lift and/or carry 25 pounds frequently and 50 pounds occasionally, can stand and/or walk about 3 hours in an 8-hour day and sit with normal breaks for a total of about 6 hours in an 8-hour day, is precluded from any highly skilled, complex work and is unable to work closely with the general public or co-workers because of a personality disorder, depressive disorder, somatization disorder, and alcohol abuse in self-reported remission, and is further precluded from any work where good hearing is essential; that the claimant is unable to perform any of his past relevant work (20 C.F.R. §§ 404.1565 and 416.965); that the claimant is an "individual closely approaching advanced age" (20 C.F.R. §§ 404.1563 and 416.963); that the claimant has "a marginal education" (20 C.F.R. §§ 404.1564 and 416.964); that the claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. §§ 404.1568 and 416.968); that the claimant has the residual functional capacity to perform a significant range of medium work (20 C.F.R. §§ 404.1567 and 416.967); that, although the claimant's exertional limitations do not allow him to perform the full range of medium work, using Medical-Vocational Rule 203.19 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform, including work as a production assembler, a production inspector, and a hand packer, with 2,150 such jobs in the Tennessee region and 324,000 such jobs in the national economy; and that the claimant

was not under a "disability," as defined in the Social Security Act, at any time through the date of the ALJ's decision (20 C.F.R. §§ 404.1520(g) and 416.920(g).

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to evaluating whether substantial evidence supports the ALJ's conclusion and whether the ALJ applied proper legal standards. *Key v. Callahan*, 109 F.3d 273 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To determine whether substantial evidence exists, the Court must review the administrative record as a whole. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Reversal of the Commissioner's findings is not appropriate "merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

The regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled, 20 C.F.R. § 416.920 and § 404.1520. The ALJ properly cited this requirement and properly applied it to evaluate the plaintiff's claim that he became

disabled in April, 2001, because of depression, nervousness, tinnitus, arthritic knees, bilateral plantar fascitis, and a history of alcohol abuse in self-reported remission. (Tr. 132).

Plaintiff argues that substantial evidence did not support the decision of the ALJ, because the ALJ erred: in finding that Plaintiff could perform a significant range of medium work; by posing an incomplete and inaccurate hypothetical to the vocational expert; by failing to consider the entire record in determining credibility; by finding that there was no objective basis to account for Plaintiff's complaints; by failing to give adequate weight to plaintiff's psychological problems; and by failing to find that Plaintiff satisfied Medical Vocational Guideline 201.09. [Doc. 13].

The Commissioner contends that substantial evidence supports the ALJ's decision regarding the issues presented on appeal by the plaintiff. The Commissioner argues that the ALJ correctly concluded that plaintiff was not disabled, because he could perform a significant number of medium work jobs in the regional and national economy, given his medical and vocational characteristics. [Doc. 17].

After careful review of the record, the Court finds that there is some confusion in the ALJ's decision over the extent of Plaintiff's mental limitations, and, because of that confusion, it is possible that the ALJ did not pose a complete hypothetical to the vocational expert. Accordingly, the case will be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

Plaintiff contends that the ALJ erred by finding that Plaintiff could perform a significant range of medium work. Plaintiff presents several arguments as to why the ALJ's

4

finding of medium work was erroneous, including: Plaintiff's limitation of three hours of standing and walking and six hours of sitting in an eight hour day; the vocational expert's finding that there were no medium jobs available; Plaintiff's inability to stoop or crouch; Plaintiff's multiple mental restrictions, which the ALJ ignored; and the ALJ's misinterpretation of Dr. Humphrey's findings.

The ALJ did not err by finding that Plaintiff could perform a range of medium work, despite Plaintiff's walking, sitting, and standing limitations. In his hypothetical to the vocational expert, the ALJ clearly established that Plaintiff could perform the lifting for medium exertion, meaning he was able to lift twenty-five pounds frequently and fifty pounds rarely, but did face limitations in his ability to sit or stand. [Tr. 52]. It is clear from the ALJ's residual functional capacity determination that the ALJ did not consider Plaintiff capable of performing the full range of medium work, and the record provides substantial evidence for the ALJ's decision.

With respect to the vocational expert's testimony, she established that, because of the various restrictions described by the ALJ, the hypothetical individual "would drop down to a light limitation," and identified some light, unskilled jobs which would have a sit or stand option. [Tr. 53]. Based upon the vocational expert's testimony, the ALJ found that

> although the claimant's exertional limitations do not allow him to perform the full range of medium work, using Medical-Vocational Rule 203.19 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform, including work as a production assembler, a production inspector, and a hand packer, with 2,150 such jobs in the Tennessee region and 324,000 such jobs in the national economy.

5

[Tr. 142]. It is again evident from the ALJ's findings that the ALJ recognized that Plaintiff could perform some aspects of medium work (the ability to lift twenty-five pounds regularly and fifty pounds rarely), but faced other restrictions which precluded him from performing the entire range of medium work.

It is true that the vocational expert, based upon the limitations established by the ALJ, testified that the hypothetical individual described would be limited to light jobs, but the vocational expert's testimony does not change the ALJ's residual functional capacity determination. The residual functional capacity determination is, by federal law, a medical assessment, and has nothing to do with matters within the knowledge of a vocational expert. 20 C.F.R. § 416.945. The determination of residual functional capacity is based upon the claimant's physical abilities and mental and other impairments, not on the existence of jobs in the economy or other matters within the knowledge of a vocational expert. *See id*. Additionally, even if Plaintiff were limited to light work, rather than medium work, that would not render Plaintiff disabled under the vocational guidelines.[1]

Plaintiff next argues that his inability to stoop or crouch should render him disabled. The ALJ recognized that Plaintiff had problems with his knees and feet, but did not find that those problems resulted in any restrictions in Plaintiff's ability to stoop or crouch. [Tr. 141]. The record supports the ALJ's findings. The physical residual functional capacity assessments provided by DDS physicians indicate no postural limitations. [Tr. 318, 460].

---

[1]Medical-Vocational guidelines rule 202.11 indicates that an individual of Plaintiff's age, education, and pervious work experience who is able to perform light work is not disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.11.

In addition, there are numerous other medical records which support the ALJ's decision that Plaintiff was not limited in his ability to stoop or crouch, including: full range of motion in left leg [Tr. 282]; no objective evidence of right knee impairment [Tr. 339]; no permanent impairment of knees or elbows and recommendation of return to work [Tr. 464]; good range of motion, minimal limp, and no sign of instability in left knee [Tr. 524]. There is evidence of some restrictions in Plaintiffs ability to walk or stand for long periods of time [Tr. 473], but the ALJ recognized those limitations. Additionally, Dr. McNeely did note that Plaintiff's knees and elbows bothered him, but Dr. McNeely never indicated any limitations Plaintiff might suffer because of his knees and elbows.[2] [Tr. 486-95, 557-62]. The medical evidence simply does not support Plaintiff's contention that he could not stoop or crouch. Accordingly the ALJ did not err in that regard.

Plaintiff argues that the ALJ erred by disregarding Plaintiff's mental restrictions and by misinterpreting Dr. Humphrey's findings. There are multiple mental residual functional capacity assessments in the record. In October, 2001, Dr. Humphreys, on a DDS consultative exam, found that Plaintiff was "significantly limited in ability to perform adequately in a job setting." [Tr. 298]. Dr. Humphreys further found that Plaintiff would be markedly limited in his ability to concentrate, persist, and adapt adequately in a job setting; more than likely would not maintain schedule regularly or stay on task adequately in a job; could not respond

---

[2]Dr. McNeeley did indicate that he thought Plaintiff was disabled because of Plaintiff's anxiety and nerves [Tr. 621], but "the ultimate determination of disability rests with the Commissioner, not with the treating doctor." *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

appropriately to changes in the job setting, set realistic goals, or make plans independently of others; would be moderately limited in his ability to interact with others; would be hypersensitive to negative feedback and would be overly intimidated by others; would be mildly to moderately limited in his ability to remember; and would be mildly limited in his ability to understand. [*Id*.].

In November, 2001, Dr. Regan, a DDS physician, found Plaintiff faced mild restrictions in activities of daily living and social functioning; moderate difficulty in maintaining concentration, persistence, or pace; and suffered from one or two episodes of decompensation of extended duration. [Tr. 310]. Dr. Regan also found that Plaintiff was markedly limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public, but was only moderately limited in his ability to maintain attention and concentration for extended periods, to complete normal workday and workweek and to perform at a consistent pace without unreasonable breaks, and to respond appropriately to changes in the work setting. [Tr. 314].

In May, 2002, Dr. Sachs, a DDS physician, found that Plaintiff had moderate restrictions in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace, but no episodes of decompensation. [Tr. 331]. Dr. Sachs also found Plaintiff suffered from marked limitations in his ability to interact with the general public; and moderate limitations in his ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extend periods, to work in coordination with or proximity to others without being distracted,

to complete normal workday and workweek and to perform at a consistent pace without unreasonable breaks, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. [Tr. 335].

In October, 2002, another DDS physician,[3] found that Plaintiff had moderate restrictions in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace, but no episodes of decompensation. [Tr. 441]. Also in October, 2002, a DDS physician[4] found that Plaintiff suffered from marked limitations in his ability to interact with the general public; and moderate limitations in his ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extend periods, to complete a normal workday and workweek and to perform at a consistent pace without unreasonable breaks, to respond appropriately to changes in the work setting, and to set realistic goals and make plans independently of others.

In March, 2004, Alice Garland, M.S., performed a consultative mental exam of Plaintiff. Ms. Garland found that Plaintiff had inaccurate test results, felt Plaintiff was not fully cooperative, and was hesitant to "make a diagnosis or determine limitations based on this evaluation alone." [Tr. 544-48]. Ms. Garland did not provide a full RFC because of plaintiff's "poor effort in testing." [Tr. 549].

---

[3]The doctor's signature at Tr. 431 is illegible.

[4]The doctor's signature at Tr. 457 is illegible.

The record also contains other mental health related medical records, including records from Dr. Lew and from Ridgeview Psychiatric Hospital and Center [Tr. 342 - 383], which indicate that Plaintiff suffers from depression and tinnitus, though there is no indication of how these illnesses affect Plaintiff's ability to work.

After reviewing the record, the ALJ found that Plaintiff suffers from, among other things, nervousness, depression, and tinnitus. [Tr. 141]. The ALJ also found that Plaintiff is precluded from any highly skilled, complex work, is unable to work closely with the general public or co-workers, and is unable to perform any work requiring good hearing. [*Id.*]. In describing the findings of Dr. Humphreys, the ALJ correctly summarized Dr. Humphreys' findings of marked and moderate limitations [Tr. 135], but later found that Plaintiff has moderate limitations in activities of daily living, social functioning, and concentration, persistence, or pace. [Tr. 138]. The ALJ felt that these moderate limitations were "commensurate" with the findings of Dr. Humphreys. [*Id.*].

The resolution of conflicting assertions between physicians is left to the Commissioner. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 537 (6th Cir. 1981). In the instant case, there were a number of conflicting mental residual functional capacity evaluations, but only Dr. Humphreys found Plaintiff to be markedly limited in his ability to concentrate, persist, and adapt adequately in a job setting. In addition, Dr. Humphreys' opinion is very tentative, indicating Plaintiff "likely" would be limited, as opposed to a strong assertion that Plaintiff is limited. [Tr. 298]. Given Dr. Humphreys' tentative assertions, and given the other medical evidence supporting a finding of moderate,

rather than marked, limitations, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff suffered from only moderate, rather than marked, limitations and the ALJ properly evaluated Plaintiff's mental illnesses.

As far as the ALJ's statement that his findings were "commensurate" with the findings of Dr. Humphreys, while the ALJ's choice of wording was somewhat problematic, as a finding of a moderate limitations is less than, rather than commensurate[5] to, a marked limitation, the ALJ did not err. It is clear from the ALJ's earlier summary of Dr. Humphreys's opinion that the ALJ correctly understood Dr. Humphreys's diagnosis and that, in the face of contradictory medical evidence, did not give full credit to Dr. Humphreys's opinion. Given that Dr. Humphreys saw Plaintiff only once, the treating physician rule does not apply, therefore the ALJ was not required to explain why he discounted Dr. Humphreys' opinion. *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983) (holding that a physician who sees a claimant only once does not constitute a treating physician).

Plaintiff next argues that the ALJ erred by posing an incomplete and inaccurate hypothetical to the vocational expert. Plaintiff contends that the hypothetical posed by the ALJ did not accurately portray Plaintiff's mental limitations, nor Plaintiff's inability to stoop and bend. The Court has already found that the record does not support Plaintiff's claim that Plaintiff cannot stoop or bend. However, the ALJ does state in his opinion that Plaintiff "has

---

[5]Commensurate is defined as "equal in measure or extent" and "corresponding in size, extent, amount, or degree." *Merriam Webster's Collegiate Dictionary* 230 (10th ed. 1995).

11

moderate limitations in the activities of daily living and moderate limitations in social functioning," as well as "moderate limitations in concentration, persistence, or pace." [Tr. 138]. The ALJ did not include these limitations in his list of findings, though, instead stating only that Plaintiff is "precluded from any highly skilled, complex work and is unable to work closely with the general public or co-workers." [Tr. 141]. It is therefore unclear whether the ALJ actually found Plaintiff suffered from moderate mental limitations, including moderate limitations in concentration, persistence, or pace. The hypothetical posed to the vocational expert similarly failed to indicate Plaintiff had moderate limitations in daily living, social functioning, and concentration, persistence, or pace. [Tr. 52].

An ALJ may rely on the testimony of a vocational expert only when the hypothetical posed to the expert accurately portrays the claimant's physical and mental limitations. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). In the instant case, it appears that the ALJ failed to fully set forth Plaintiff's mental limitations, such as Plaintiff's moderate limitation in concentration, persistence, or pace. With such an omission, the vocational expert's testimony cannot serve as substantial evidence in support of the ALJ's decision. Accordingly, the ALJ's decision must be reversed and it is necessary to remand this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (holding that sentence four remand is appropriate when ALJ posed incomplete hypothetical).

Plaintiff next argues that the ALJ failed to consider the whole record in making his credibility determination. It is for the ALJ, not the district court, to decide questions of

credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). After reviewing the entire record, the Court finds that substantial evidence supports the ALJ's decision to discount Plaintiff's testimony. Given the opinion of Ms. Garland that Plaintiff was not putting forth his best effort, coupled with Plaintiff's conflicting statements to doctors of performing odd jobs, the ALJ did not err in finding Plaintiff was not credible.

Plaintiff next argues that the ALJ erred in finding that there was no objective basis to account for the extent of Plaintiff's complaints. Again, after reviewing the record as a whole, the Court finds that the ALJ did not err. As noted above, there is evidence of record that indicates that plaintiff's physical limitations were not completely disabling. Similarly, there is evidence of record that indicates Plaintiff's mental problems were not completely disabling. While there is some question, based upon the potentially incomplete hypothetical, as to whether there were any jobs in the national economy Plaintiff could perform, substantial evidence does support the ALJ's finding that Plaintiff's mental and physical ailments were not completely disabling, despite Plaintiff's claims to the contrary.

Plaintiff next contends that the ALJ failed to give proper weight to Plaintiff's mental problems. As noted above, the Court has found that the record supports the ALJ's determination that Plaintiff suffers from moderate limitations. The ALJ correctly weighed the various opinions as to the extent of Plaintiff's mental health and, based upon those conflicting opinions, made a determination which is supported by substantial evidence.

Finally, Plaintiff contends that the ALJ erred by failing to find that Plaintiff was disabled because of Medical Vocational Guideline 201.09. Plaintiff contends that the

guidelines show he is disabled. Based upon the ALJ's determination that Plaintiff is able to perform a range of medium work, he is not disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.11 (indicating that an individual of Plaintiff's age, experience, and education who is able to perform light work, or higher, is not disabled).

Accordingly, to the extent that the ALJ potentially erred by failing to include all of Plaintiff's mental limitations in the hypothetical to the vocational expert, Plaintiff's motion [Doc. 12] will be **GRANTED** and the Commissioner's motion [Doc. 16] will be **DENIED**. The decision of the defendant Commissioner will be **REVERSED** and this case will be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for a new hearing at which time the ALJ can clarify the extent of Plaintiff's mental limitations, including what level of limitations, if any, Plaintiff has in the activities of daily living, social functioning, and concentration, persistence, or pace, and, if necessary, correct any error in the hypothetical posed to the vocational expert and obtain new testimony from the vocational expert.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE